```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                      FORT MYERS DIVISION

FORD  MOTOR  CREDIT  COMPANY
LLC, f/k/a Ford Motor Credit
Company,

       Plaintiff,

v.                                Case No: 2:16-cv-105-FtM-99MRM

RONALD PARKS,

       Defendant.
_____
```

**OPINION AND ORDER**

This matter comes before the Court on plaintiff's Motion for Default Judgment as to Amended Complaint (Doc. #27) filed on December 23, 2016. No response has been filed and the time to respond has expired. The Court finds that an evidentiary hearing is not required and will render a decision based on the documents submitted.

**I.**

On February 5, 2016, plaintiff Ford Motor Credit Company, LLC, f/k/a Ford Motor Credit Company (plaintiff or Ford Credit) filed a Complaint (Doc. #1) and is currently proceeding on its one-count Amended Complaint[1] (Doc. #24) against defendant Ronald Parks (defendant or Parks) for breach of personal guaranties,

---

[1] The original Complaint (Doc. #1) was dismissed without prejudice for failure to plead subject-matter jurisdiction. (Doc. #23.)

wherein Parks guaranteed certain indebtedness owed to Ford Credit by Bi-State Ford Truck Sales, Inc. (the "Dealership"). Because defendant failed to respond to plaintiff's Complaint (Doc. #1), a Clerk's Entry of Default (Doc. #18) was entered on June 1, 2016.[2] Plaintiff now moves for the entry of judgment against defendant for damages, attorneys' fees, and costs and expenses.

## II.

When a default judgment occurs, a defendant admits the plaintiff's well-pled allegations of fact. If liability is well pled, it is established by virtue of a default judgment. Buchanan v. Bowman, 820 F.2d 359, 361 (11th Cir. 1987). The mere entry of a default by the clerk does not in itself warrant the entry of default by the Court. Rather the Court must find that there is sufficient basis in the pleadings for the judgment to be entered." GMAC Commercial Mortg. Corp. v. Maitland Hotel Assocs., Ltd., 218 F. Supp. 2d 1355, 1359 (M.D. Fla. 2002) (citation omitted). A complaint must state a claim in order for default judgment to be granted. Id.

---

[2] Plaintiff did not serve defendant with the Amended Complaint; however, plaintiff mailed a copy to defendant via U.S. Mail. (Doc. #26, Certificate of Service.) Personal service pursuant to Federal Rule of Civil Procedure 4 on a party who is in default for failing to appear is only required if the Amended Complaint contains "new or additional claims for relief." Fed. R. Civ. P. 5(a)(2). The Amended Complaint here only corrected jurisdictional allegations and did not include any new or additional claims.

Deeming all facts in the Amended Complaint as admitted, beginning in or about December 11, 1990, and again on January 1, 1998, the Dealership[3] executed and delivered to Ford Credit a Wholesale Agreement whereby the Dealership financed its purchases of new and used motor vehicles with Ford Credit. (Docs. ##24, ¶¶ 15-16; 24-2, 24-3.) In consideration of Ford Credit's agreement to finance the Dealership's acquisition of the motor vehicles, the Dealership granted Ford Credit a security interest in, among other things, the vehicles, the proceeds from the sale of such vehicles, and any rebates or refunds owed to the Dealership. (Docs. ##24, ¶ 21, 24-4.) Under the terms of the Wholesale Agreements, upon default, Ford Credit was entitled to accelerate any unpaid balance and take immediate possession of all property subject to its security interest. (Id. at ¶ 23.)

On or about May 24, 1999, Parks executed and delivered to Ford Credit a Continuing Guaranty. (Doc. #24-9.) Under the Continuing Guaranty, Parks guaranteed payment of the indebtedness from the Dealership under the Loan Agreement, and agreed that he would pay the indebtedness upon demand without Ford Credit first having to proceed against the Dealership. (Id.) By signing the Continuing Guaranty, Parks also guaranteed any losses, costs,

---

[3] The Dealership was engaged in the business of selling new and used motor vehicles to the public, but is no longer in business. (Doc. #24, ¶ 3.)

reasonable attorney's fees, and expenses which Ford Credit may suffer by reason of Dealership's default. (Id.)

On or about March 8, 2006, the Dealership executed and delivered to Ford Credit a Master Loan and Security Agreement ("Master Loan Agreement"), as well as a Loan Supplement to the Master Loan Agreement (Revolving Line of Credit), which was amended on or about March 4, 2009.[4]  (Docs. ## 24-5 – 24-7.)  Pursuant to the Loan Agreement, Ford Credit agreed to provide the Dealership with a revolving line of credit of $150,000.  (Doc. #24, ¶ 30.)

On or about March 8, 2006, the Dealership executed and delivered to Ford Credit a Cross-Default Agreement (Doc. #24-8), which provide that "an Event of Default with respect to any Loan shall be an Event of Default with respect to all Loans," and applied to Dealership's indebtedness under the Wholesale Agreement, Loan Agreement, and any other loans that Ford Credit made thereafter.  (Doc. #24, ¶¶ 35-37.)  Also on March 8, 2006, Parks executed and delivered to Ford Credit, a second Continuing Guaranty (the "2006 Guaranty"), guaranteeing payment of the indebtedness from the Dealership under the Loan Agreement, as well as costs and reasonable attorney's fees.[5]  (Doc. #24-10.)

---

[4] Collectively, the Master Loan Agreement, Loan Supplement, and Second Loan Supplement are referred to herein as the "Loan Agreement."

[5] Collectively, the 1999 and 2006 Continuing Guaranties are referred to herein as the "Guaranties."

The Dealership began suffering financial difficulties, and on February 22, 2010, Parks informed Ford Credit that he intended to resign the Dealership's sales and service franchise agreement with Ford Motor Company and cease all Dealership operations on February 26, 2010.  (Doc. #24, ¶ 49.)  The Dealership's resignation was an event of default under the Loan Agreement and, pursuant to the Cross-Default Agreement, was also a default under the Wholesale Agreement.  (Id. at ¶ 50.)  Thereafter, Ford Credit sold the collateral, and after applying the resulting proceeds to the indebtednesss that the Dealership owed to Ford Credit under the Loan Agreement, a substantial deficiency remained.  (Id. at ¶ 52.)

On March 8, 2011, October 11, 2011, and January 27, 2015, Ford Credit demanded, in writing, that Parks pay the past due amounts pursuant to the Guaranties.  (Doc. #24-11.)  Parks has failed to do so and now owes Ford Credit in excess of $500,000, with contractual interest continuing to accrue according to the express terms of the Loan Agreement.[6]  (Doc. #24, ¶¶ 33-34.)

Plaintiff's Affidavit of Ford Credit in Support of Motion for Default Judgment (Doc. #20), attaches the loan documents referenced in the Amended Complaint and states that the documents are true, accurate, and complete copies.  (Docs. ##20-1 – 20-10.)

---

[6] Specifically, the Wholesale Agreement contained an interest rate of 9.5% per annum, post-default; the Loan Agreement contained an interest rate of 11.25% per annum, post-default.  (Id. at ¶¶ 58-59.)

Also provided is the Affidavit of Joanna Dickinson, Esq., counsel for Ford Credit (Doc. #21), in support of the request for attorneys' fees, costs, and expenses.

### III.

The elements of a breach of contract cause of action are: (1) a valid contract, (2) a material breach, and (3) damages. <u>Havens v. Coast Florida, P.A.</u>, 117 So. 3d 1179, 1181 (Fla. 2d DCA 2013). Here, Ford Credit alleged that Parks personally guaranteed repayment of the Dealership's debt, that Parks breached the guaranty by refusing to pay that debt, and that the Dealership and Parks owes Ford Credit more than $500,000. Thus, the Court finds that plaintiff has adequately pled a breach of guaranty, which allegations are deemed admitted, supporting the entry of a default judgment against defendant.

**A.   Damages**

With regard to damages, plaintiff submitted an Affidavit of K. Pamela Smith, Status Supervisor employed by Ford Credit whose duties include overseeing the financial aspects of Ford Credit's response following default by a dealership. (Doc. #20, "Smith Affidavit".) In the Smith Affidavit, Ford Credit asserts a claim of $531,157.59, excluding the attorney's fees and costs incurred in seeking enforcement of the Guaranties. Plaintiff seeks damages in the form of unpaid advances, unpaid past due interest and flat charges, accrued contractual interest, outstanding indebtedness,

and expenses incurred related to the default and sale of the collateral. (Id. at ¶ 58.) Specifically, as of August 15, 2016, plaintiff asserts the following is due and owing:

| | |
|---|---|
| Unpaid advances made under the Wholesale Agreement | $164,922.23 |
| Unpaid past due interest and flat charges under the Wholesale Agreement through March 8, 2011 | $30,535.29 |
| Accrued contractual interest under the Wholesale Agreement from March 8, 2011 to April 6, 2011 | $1,355.17 |
| Accrued contractual interest under the Wholesale Agreement from April 6, 2011 to August 15, 2016[7] | $84,037.36 |
| Outstanding indebtedness under the Loan Agreement | $146,373.96 |
| Unpaid past due interest under the Loan Agreement through March 8, 2011 | $11,079.14 |
| Accrued contractual interest under the Loan Agreement from March 8, 2011 to August 15, 2016[8] | $89,653.44 |

---

[7] Contractual interest continues to accrue on the amount due under the Wholesale Agreement at the annual post-default rate of 9.5% from August 16, 2016 to the date of entry of judgment (a per diem rate of $42.92).

[8] Contractual interest continues to accrue on the amount due under the Loan Agreement at the annual post-default rate of 11.25% from August 15, 2016 to the date of entry of judgment (a per diem rate of $45.12).

| | |
|---|---|
| Expenses incurred related to the default and the sale of the collateral | $3,201.00 |
| **TOTAL** | $531,157.59 |

Defendant has failed or refused to pay the amounts due and owing, and is indebted to plaintiff in the amount of $531,157.59 under the Guaranties as of August 15, 2016.  The Court will grant the requested pre-judgment interest, and apply the combined, continuing per diem rate stated in the agreements of $88.04 ($42.92 + $45.12) through the date of entry of judgment.

### B.   Attorneys' Fees

Attorney Dickinson, who is admitted *pro hac vice*, along with local counsel in Tampa, seek attorneys' fees in the amount of $15,856.80 for time spent in pursuing this action.   Attorney Dickinson is with the law firm of Phillips Lytle in Buffalo, New York, which commenced its work on this matter in 2011 beginning with pre-suit demands, and through July of 2016 had performed 59.3 hours of work in categories as set forth in the Affidavit. (Doc. #21, ¶ 7, "Dickinson Affidavit".)   Also in support, the Smith Affidavit states that the Guaranties allow a recovery of a reasonable attorneys' fees of 15% of any judgment if permitted by law, costs, and expenses, which would entitle Ford Credit to $79,673.64 attorneys' fees ($531,157.59 x 15% = $79,673.64);

however, an award of $19,362.02 for attorneys' fees, costs, and expenses is all that is requested. (Doc. #20, ¶¶ 63-68.)

A reasonable attorney fee is calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate, Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), and a "reasonable hourly rate" is "the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation," Norman v. Housing Auth. of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988). The party seeking an award of fees should submit adequate documentation of hours and rates in support, or the award may be reduced. Hensley, 461 U.S. at 433.

Although no time sheets were submitted in support, the Dickinson Affidavit details the categories of tasks performed and states that Phillips Lytle's hourly rate for attorneys working on this matter ranged from $230.00 to $380.00, and $100.00 to $170.00 per hour for paralegal time. (Doc. #21, ¶ 10.) The work outlined represents 35.3 attorney hours and 24.0 paralegal hours. (Doc. #21, ¶ 8.) The burden is on the fee applicant "to produce satisfactory evidence" that the rate is in line with those prevailing in the community. Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). It is clear that the applicable prevailing market in this case is the Fort Myers area, and not Tampa or New York. See Olesen-Frayne v. Olesen, 2:09-cv-49-FTM-29DNF, 2009 WL

3048451, at *2 (M.D. Fla. Sept. 21, 2009) (prevailing market is the Fort Myers Division)).

The Court finds that the 59.3 hours of work expended on this case from 2011 through July of 2016[9] is reasonable given the level of complexity and filings in this matter, as well as pre-suit demands sent to defendant. The Court also finds that given the number of hours (59.3) and total amount of attorneys' fees incurred ($15,856.80), the combined average attorney and paralegal rate charged is $267.00 an hour, which the Court finds is reasonable and in line with the prevailing market rate. The motion will be granted for the requested amount.

### C. Costs and Expenses

Attorney Dickinson's Affidavit was also filed in support of a request for $3,505.22 in costs and expenses. (Doc. #21, ¶ 12.) The Affidavit only briefly states that this amount "includes computerized database research, filing fees, Federal Express charges, and copy fees." (Id.) No further documentation is submitted, but the Court finds that the costs are allowable because they are not otherwise limited by the Loan Agreement and Guaranties to statutory costs.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

---

[9] Although work on this matter continued past July of 2016, plaintiff only requests attorneys' fees through this month.

1. Plaintiff's Motion for Default Judgment as to Amended Complaint (Doc. #27) is **GRANTED.** The Clerk shall enter judgment on the Amended Complaint as follows:

   a. In favor of plaintiff and against defendant in the amount of $531,157.59, plus continuing interest in the combined per diem rate of $88.04 from August 15, 2016 through the date of entry of judgment;

   b. Attorneys' fees in the amount of $15,856.80 and

   c. Costs and expenses in the amount of $3,505.22.

2. The Clerk is further directed to terminate all pending matters and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this ___19th___ day of January, 2017.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record

- 11 -